UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
ISMAEL GAMEZ GARCIA,

                 *Plaintiff*,

   -against-

KILOLO KIJAKAZI ACTING
COMMISSIONER OF SOCIAL SECURITY,

                *Defendant*.
--------------------------------------------------X

                        **MEMORANDUM AND ORDER**
                        22-CV-1620 (KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

      Plaintiff Ismael Gamez Garcia ("Plaintiff") appeals the final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") finding him not disabled within the meaning of the Social Security Act (the "Act") and not entitled to disability insurance benefits ("DIB") under Title II of the Act. Plaintiff and the Commissioner have submitted cross motions for judgment on the pleadings. For the reasons herein, Plaintiff's motion is **GRANTED**, the Commissioner's cross motion is **DENIED**, and this action is **REMANDED** for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

      The parties have filed a joint stipulation of relevant facts, which the Court has reviewed and incorporates by reference. (*See* ECF No. 25, Joint Stipulation of Facts ("Stip.").) Here the Court briefly recounts the facts relevant to the instant motions.

As a child, Plaintiff received disability insurance benefits ("DIB"). On April 29, 2015, Plaintiff — who was then 18-years-old — received notice that his benefits would cease on June 30, 2015. (ECF No. 17, Administrative Transcript ("Tr.") at 78.) Plaintiff filed a request for reconsideration on June 11, 2015, alleging that his disability continued. (*Id.* at 84–85.) Plaintiff claimed that he was disabled due to cerebral palsy, hemiplegia, equinovalgus, cardiac tricuspid valve regurgitation, and a learning disability. (*Id.* at 98–99.) On November 11, 2015, Plaintiff was notified that the Disability Hearing Officer determined that Plaintiff's health had improved, and that Plaintiff's "benefits may stop." (*Id.* at 110-11.)

On December 22, 2015, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 109.) ALJ Jay L. Cohen held a hearing on June 20, 2019. (*Id.* at 389.) In a decision dated November 18, 2019, the ALJ found that Plaintiff was not disabled. (*Id.* at 15-23.) Plaintiff appealed the ALJ's decision to the Appeals Council. (*Id.* at 433.) On January 27, 2022, the Appeals Council denied review of the ALJ's decision, rendering it the final decision of the Commissioner. (*Id.* at 1-8.) On March 24, 2022, Plaintiff filed the instant action seeking judicial review of the Commissioner's decision. (*See generally*, ECF No. 1, Complaint ("Compl.").)

### LEGAL STANDARD

To receive disability benefits, a claimant must be "disabled" within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). A claimant qualifies as disabled when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The impairment must be of "such severity" that the claimant is unable to do his previous work or engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A). "The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . .; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (alterations in original)).

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits "within sixty days after the mailing . . . of notice of such decision or within such

3

further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g).   "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error."   *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citation omitted); *see also* 42 U.S.C. § 405(g).   "Substantial evidence is more than a mere scintilla," and must be relevant evidence that a "reasonable mind might accept as adequate to support a conclusion."   *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971) (internal quotation marks omitted)).

If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld.   42 U.S.C. § 405(g).   Inquiry into legal error requires the Court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act."   *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation omitted).   The reviewing court does not have the authority to conduct a *de novo* review and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. This process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that [s]he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in h[er] prior type of work, the Commissioner must find h[er] disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (internal quotation marks and citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

During this five-step process, the Commissioner must consider whether the combined effect of all the claimant's impairments, including those that are not severe (as defined by the regulations), would be of sufficient severity to establish eligibility for Social Security benefits. 20 C.F.R. §§ 404.1523, 404.1545(a)(2). At steps one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability." *Burgess*, 537 F.3d at 128. At step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's RFC, age, education, and work experience, the claimant is "able to engage in

5

gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

Lastly, federal regulations explicitly authorize a court, upon reviewing decisions of the Commissioner, to remand for further proceedings when appropriate.  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard."  *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotation marks omitted)).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  *Pratts*, 94 F.3d at 39.  If the record before the court provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," however, the court may reverse and remand solely for the calculation and payment of benefits.  *See, e.g.*, *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

## DISCUSSION

### I.    The ALJ's Disability Determination

Using the five-step sequential process described above, the ALJ determined that Plaintiff was no longer disabled. (ECF No. 17, Tr. at 23.)  Because Plaintiff had never engaged in substantial gainful activity, step one is "not used for redetermining disability at age 18." (*Id.* at 16); *see* 20 CFR 416.987(b).  At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "residual effects of cerebral palsy and cardiac tricuspid insufficiency." (*Id.* at 17-18.)  The ALJ also found that Plaintiff's impairments "significantly limit the ability to perform basic work activities." (*Id.*)

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that equaled the severity of listed impairments under 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 4041525 and 404.1526). (*Id.* at 19.) Specifically, the ALJ found that Plaintiff's impairments did not meet the criteria for any listed physical impairment. The ALJ also determined that Plaintiff's asthma and learning disorder were "nonsevere impairments." (*Id.* at 17.)

Regarding Plaintiff's asthma, the ALJ found that it did not meet "the durational requirements" and that it did not "create[] any specific functional limitations regarding the claimant's ability to perform work related activities." (*Id.*)  In making this

7

determination, the ALJ relied on Plaintiff's statement that he did not have asthma, as well as Plaintiff's medical history indicating that Plaintiff had not had an asthma attack in over five years. (*Id.*)

Regarding Plaintiff's learning disorder, the ALJ found that there was no evidence of any mental impairment. (*Id.*) In making this determination, the ALJ considered whether Plaintiff had satisfied the "paragraph B" criteria of the mental impairment listings. (*Id.* at 18.) To satisfy the "paragraph B" criteria, Plaintiff's mental impairments must result in at least one "extreme" or two "marked" limitations in four areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (*Id.*) Upon review, the ALJ found no limitation in the second and fourth areas and only a mild limitation in the first and third areas, thus finding that the limitation was nonsevere. (*Id.*)

The ALJ determined that Plaintiff had a moderate limitation in understanding, remembering, or applying information, based on Plaintiff's high school psychological evaluation showing that Plaintiff had a full-scale IQ score of 90 and that his intellectual functioning "was within normal limits." (*Id.*) The ALJ determined that Plaintiff had no limitation in interacting with others, based on a medical consultive exam where Plaintiff stated

8

that he "played sports and socialized with friends." (*Id.*)  The ALJ determined that Plaintiff had a mild limitation concentrating, persisting, or maintaining pace based on the previously mentioned high school psychological evaluation.  (*Id.*)  Finally, the ALJ determined that Plaintiff had no limitation in adapting or managing himself, based on a lack of any evidence to the contrary.  (*Id.*)

Before proceeding to step four, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 CFR 416.967(b).  (*Id. at 19.*)  In reaching this conclusion, the ALJ considered a state agency consultative examiner's opinion as well as Plaintiff's hearing testimony, most recent psychological test, and medical records, which included office treatment records from Plaintiff's physicians Dr. Achiau Ludomirsky, M.D.; Dr. Angelina Mihu, M.D.; Dr. Alberto Glendalyz, M.D.; and Dr. Joyce Graber, M.D.  (*Id. at 20–21.*)  The ALJ noted that the record reflected that Plaintiff had some residual effects of cerebral palsy and cardiac tricuspid insufficiency but found little evidence indicating a significant impairment in Plaintiff's motor functioning.  (*Id.*)  Specifically, the ALJ found that Plaintiff has "no gait deformity, normal muscle strength, and intact hand and finger dexterity." (*Id. at 22.*)  The ALJ gave significant weight to Dr. Glendalyz's opinion, some weight to Dr. Graber's opinion, and no weight to Dr. Mihu's opinion.  (*Id.*

9

at 20–21.)

The ALJ also relied on Plaintiff's reported daily activities in determining Plaintiff's RFC to perform "light work". (*Id.* at 21.) The ALJ ultimately concluded that, although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with, or supported by, the medical evidence and other evidence in the record. (*Id.* at 19.)

At step four, the ALJ determined that Plaintiff had no past relevant work. (*Id.* at 22.) Because Plaintiff had no past relevant work, transferability of job skills was not an issue. (*Id.*)

At step five, the ALJ concluded that there were a significant number of jobs in the national economy that Plaintiff could perform based on Plaintiff's age, education, work experience, and RFC capacity for the full range of light work. (*Id.*) The ALJ relied on a state agency consultive examiner who noted that Plaintiff "can lift and carry 10 pounds frequently and 20 pounds occasionally and could sit for six hours and stand and walk two hours in an eight-hour workday." (*Id.* at 21.)

Accordingly, the ALJ found that Plaintiff was no longer "disabled" and thus not entitled to DIB under the Act. (*Id.* at 23.)

10

## II.  The ALJ Erred in Evaluating Subjective Symptom Testimony in Making the RFC Determination

Plaintiff contends that the ALJ committed reversable errors by (1) improperly evaluating subjective symptom testimony, (2) erroneously weighing medical opinions, and (3) failing to adequately develop the record.  (*See* ECF No. 21, Plaintiff Memorandum of Law ("Pl. Mem.") at 8.)  The Commissioner responds that the ALJ fulfilled his duty to develop the record and that substantial evidence supports the ALJ's decision.  (*See* ECF No. 24, Defendant Memorandum of Law ("Def. Mem.") at 11.)

Plaintiff's primary argument is that the ALJ "failed to make a credibility finding" for the testimony of Plaintiff's mother, Reyna Garcia ("Ms. Garcia").  (ECF No. 21, Pl. Mem. at 7.) Plaintiff contends that the ALJ did not mention Ms. Garcia's testimony in the disability determination.  (ECF No. 1, Compl. at 5.)  This assertion is accurate. (*See generally* ECF No. 17., Tr.) After review, the Court agrees with Plaintiff that the ALJ erred in not considering Ms. Garcia's testimony.

Social Security Ruling 11-2p: Titles II and XVI: Documenting and Evaluating Disability in Young Adults (2011) ("SSR 11-2p") governs the analysis for young adults aged 18-25.  Because Plaintiff was 18 years old at the time his benefits were redetermined, SSR 11-2p applies to his case.  When a child who is receiving Title XVI childhood disability benefits turns 18 they must

11

undergo a disability redetermination. SSR 11-2p. The same disability definitions and rules to make disability determinations for adults also apply to young adults. *Id*. Much of the same evidence is used to evaluate both adults and young adults, however, SSR 11-2p provides three subcategories of evidentiary sources that are considered to determine whether a young adult is disabled: (1) medical, (2) non-medical, and (3) school programs. *Id.* Additionally, SSR 11-2p provides considerations related to evaluating a young adult's impairment-related limitations: (1) evidence regarding functioning from educational programs; (2) community experiences, including job placement; (3) psychosocial supports and highly structured or supportive settings; (4) extra help and accommodations; and (5) work-related stress. *Id.*

For the second subcategory of evidence, SSR 11-2p instructs ALJs to consider "[e]vidence from other sources who are not medical sources, but who know and have contact with the young adult," such as "family members" or "educational personnel" to assist in "evaluat[ing] the severity and impact of a young adult's impairment(s)." SSR 11-2p; *see also Samuel v. Comm'r of Soc. Sec.*, No. 14-cv-4634 (PKC), 2015 WL 5774850, at *13 (E.D.N.Y. Sept. 30, 2015) (finding that the ALJ's failure to question the plaintiff's aunt — with whom the young adult plaintiff lived — was a failure to develop the record).

Ms. Garcia — as Plaintiff's mother — would be considered a non-medical source that would be able to provide first-hand knowledge as to the severity and impact of Plaintiff's impairments due to her close contact with him. (ECF No. 17, Tr. at 40 (indicating that Plaintiff lived with his mother).) In Plaintiff's hearing, Ms. Garcia testified that Plaintiff's disabilities prevent him from being able to clean, shop, cook, or shave without her assistance.  (ECF No. 17, Tr. at 55-56).  Plaintiff's mother completes basic tasks for Plaintiff such as shopping for clothes and groceries as well as cutting his food and shaving him. (ECF No. 17, Tr. at 45-46, 49-52.)  Additionally, Ms. Garcia described how she has observed the impacts of Plaintiff's hand weakness, back pain, fatigue, and concentration issues.  (*Id.* at 56-57.)

Ms. Garcia's testimony was not mentioned in the ALJ's disability determination. (*See generally*, *id.* at 15-23.) The ALJ's failure to consider Ms. Garcia's testimony fails to comply with SSR 11-2p and is in error. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984) ("Social Security Rulings are binding on all components of the [SSA].").

### A. The ALJ's Failure to Properly Consider the Subjective Symptom Testimony of Ms. Garcia Caused Plaintiff Prejudice

Having concluded that the ALJ failed to properly consider the subjective symptom testimony of Ms. Garcia, the Court must determine whether this resulted in prejudice to Plaintiff,

justifying remand.   The Court finds that it did.

The record shows Plaintiff's heavy reliance on Ms. Garcia. (*See, e.g.,* ECF No. 17, Tr. at 40 (indicating that Plaintiff lives with his mother), 45–46, 49 (showing that Plaintiff's mother completes basic tasks for Plaintiff such as shopping for clothes and groceries), 51–52 (displaying Plaintiff's need for his mother to cut his food and shave him).

Nevertheless, the ALJ did not consider Ms. Garcia's testimony let alone provide comprehensive reasoning for disregarding the testimony.   The Commissioner argues that the ALJ's rejection of Ms. Garcia's testimony is "harmless" since the testimony mirrors Plaintiff's testimony.[1]   (ECF No. 24, Def. Mem. at 14.)   The Court respectfully disagrees.   Ms. Garcia's testimony — particularly her testimony regarding Plaintiff's need for assistance to perform daily activities — should have been considered in the ALJ's evaluation of the severity and impact of Plaintiff's impairments.   *See Rosa v. Comm'r of Soc. Sec.*, No. 17-cv-3344 (NSR) (JCM), 2018 WL 5621778, at *13 (S.D.N.Y. Aug. 13, 2018) (finding that the plaintiff's mother "could have provided useful information about [the plaintiff's]

---

[1] Defendant contends that "Plaintiff's mother described problems that were largely similar to what Plaintiff alleged."   (ECF No. 24, Def. Mem. at 14.)   Defendant argues that because "the ALJ gave good reasons to discount the [Plaintiff's testimony], those reasons served equally well to reject [Ms. Garcia's testimony]." (*Id.*)   The ALJ's decision does not reflect any determination on the ALJ's part, express or implied, that Ms. Garcia's testimony regarding Plaintiff's disability was taken into consideration.   Accordingly, the Court respectfully declines to adopt Defendant's post-hoc rationalization of the ALJ's lack of consideration to Ms. Garcia's testimony.

impairments and medical history."). Here, because the ALJ did not make a credibility finding for Ms. Garcia's testimony, remand is appropriate.

**B. The Impact on Plaintiff's Own Subjective Symptom Testimony**

Additionally, the ALJ's lack of consideration of Ms. Garcia's testimony could have impacted the ALJ's evaluation of Plaintiff's own subjective symptom testimony. *See Samuel*, 2015 WL 5774850, at *12-13 (determining that a caretaker's testimony could have clarified or substantiated the plaintiff's own testimony). The ALJ found that Plaintiff's contentions of pain were inconsistent with the medical evidence. (ECF No. 17, Tr. at 19.) Plaintiff contends that the ALJ improperly evaluated Plaintiff's subjective symptom testimony. (ECF No. 1, Compl. at 5.)

In accordance with regulations, the two-step process for evaluating Plaintiff's subjective statements requires: (1) determining whether there is an underlying medically determinable physical or mental impairment "that could reasonably be expected to produce the claimant's pain or other symptoms," and (2) once such an impairment has been shown, "evaluat[ing] the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations." *See* 20 C.F.R. § 404.1529. Social Security Ruling ("SSR") 96-7p sets forth seven factors that an ALJ must evaluate when determining the credibility of a claimant's statements about

his systems and the effects of his impairments. *Valet v. Astrue*, No. 10-cv-3282 (KAM), 2012 WL 194970, at *21 (E.D.N.Y. Jan. 23, 2012). These include:

> (1) Daily activities; (2) The location, duration, frequency, and intensity of pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id*. at *7-8; *see also* 20 C.F.R. § 404.1529(c).

Further, "the ALJ must consider all of the evidence in the record and give specific reasons for the weight accorded to the claimant's testimony." *Alcantara v. Astrue*, 667 F. Supp. 2d 262, 277-78 (2d. Cir. 2009) (quoting *Lugo v. Apfel,* 20 F. Supp. 2d 662, 663 (S.D.N.Y. Sept. 28, 1998) (alterations in original)). "A finding that the witness is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988) (quoting *Carroll v. Sec'y of Health & Human Servs*., 705 F.2d 638, 643 (2d Cir. 1983) (alterations in original)). "Where the ALJ fails sufficiently to explain a finding

16

that the claimant's testimony was not entirely credible, remand is appropriate." *Valet,* 2012 WL 194970, at *22 (quoting *Tornatore v. Barnhart*, No. 05-cv-6858 (GEL), 2006 WL 3714649, at *6 (S.D.N.Y. Dec. 12, 2006)).

The ALJ's decision references several of Plaintiff's subjective complaints from the hearing on December 22, 2015. These statements include Plaintiff's testimony that his symptoms — including only being able to walk 10 to 20 minutes and hand weakness — prevent him from working. (ECF No. 17, Tr. at 42, 50.)

After reviewing the record, the Court finds that the ALJ did not properly consider Plaintiff's subjective symptom testimony. The ALJ's credibility analysis was insufficient because it did not consider "all of the evidence in the record" as required. *Alcantara*, 667 F. Supp. 2d 262, at 277–78. The ALJ did not adequately evaluate Plaintiff's credibility in accordance with the similar testimony provided by Ms. Garcia. Due to this error, remand is appropriate. On remand, the ALJ will have another opportunity to thoroughly evaluate the credibility of Ms. Garcia's testimony with sufficient specificity.

### III. The ALJ's Assessment of Opinion Evidence

Under the treating physician rule, the opinion of a claimant's treating physician as to the "nature and severity of the [claimant's] impairment is given 'controlling weight' if the opinion is 'well-supported by medically acceptable clinical and laboratory

17

diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (citing *Burgess*, 537 F. 3d. at 128; 20 C.F.R. §404.1527(c)(2)).[2]

An ALJ who does not accord controlling weight to a treating physician's medical opinion must consider the following non-exclusive *Burgess* factors in determining how much weight to give to the opinion: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. *Estrella v. Berryhill*, 925 F.3d 90, 95—96 (2d Cir. 2019) (citation omitted); *see* 20 C.F.R. § 404.1527(c)(2); *but see Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear."). "The ALJ must then 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Cichocki v. Astrue*, 534 F. App'x. 71, 75 (2d Cir. 2013) (citing *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a

---

[2] In 2017, new regulations were issued that changed the standard for evaluation medical opinion evidence for claims filed on or after March 27, 2017. *See* 20 C.F.R. §404.1520c. Because Plaintiff requested reconsideration on June 11, 2015, the previous regulations, including the treating physician rule, still apply. 20 C.F.R. § 416.927 (explaining that the new rules apply only to applications filed on or after March 27, 2017).

claimant's treating physician is a ground for remand.'"   *Greek*,
802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

It should be noted that "a treating physician's
conclusion that a claimant is disabled is not entitled to
controlling weight, as this determination is reserved to the
Commissioner."   *Quiles v. Saul*, No. 19-cv-11181(KNF), 2021 WL
848197, at *9 (S.D.N.Y. Mar. 5, 2021); *see* 20 C.F.R. §
404.1527(d)(1).   "[W]hen an ALJ discounts a treating physician's
opinion that a claimant is disabled, the ALJ is obligated to give
good reasons for doing so."   *Id.*

Plaintiff contends that the ALJ erroneously discounted
the medical opinion of Dr. Mihu.   (ECF No. 21, Pl. Mem. at 4.)
Plaintiff also argues that the ALJ erroneously focused on the
medical interrogatories of Dr. Steven Goldstein.   (*Id.*)   The Court
discusses each of their opinions in turn.

**A. The ALJ's Assessment of Dr. Mihu's Opinion**

The ALJ gave "[n]o weight" to Dr. Mihu's 2018 opinion that
Plaintiff had "parethesis and paralysis with disturbance of the
right side and functional difficulty in ambulation and fine finger
movements."   (ECF No. 17, Tr. at 20.)   The ALJ found that the
limitations described by Dr. Mihu were "completely contradicted by
the record."   (*Id.*)

The ALJ also noted that "that it is questionable whether
Dr. Mihu's opinion can be considered that of a treating physician

19

and whether the opinion must be weighed" (*id.*), apparently implying that the treating physician rule did not apply to Dr. Mihu due to the lack of treating relationship between Dr. Mihu and Plaintiff. (*Id.*)  The ALJ stated that, regarding Plaintiff's single visit with Dr. Mihu, "records indicate that the purpose of the visit was that claimant needed an evaluation for legal matters." (*Id.*)  This is not contested by Plaintiff.  (ECF No. 21, Pl. Mem. at 4.)

In a circumstance where a claimant's relationship with the provider is "not based on [a plaintiff's] medical need for treatment or evaluation, but solely on [the] need to obtain a report in support of" a claim for disability, the medical source is to be considered a "nontreating source". *See* § 404.1527.  Based on the reason for Plaintiff's single visit with Dr. Mihu, the relationship between Dr. Mihu and Plaintiff would not qualify Dr. Mihu as a treating physician.  Even so, the ALJ provided comprehensive reasons for determining the weight given to Dr. Mihu's opinion.[3]  (ECF No. 17, Tr. at 20.)  Accordingly, the Court finds that Dr. Mihu would not be considered a treating physician and that the ALJ did not err in assessing no weight to Dr. Mihu's opinion.

---

[3] The ALJ found that "Dr. Mihu's opinion is given no weight as it is completely contradicted by the record including those from Dr. Alberto [Glendalyz], from the same office, who actually treated claimant." (ECF No. 17, Tr. at 20.)  The ALJ went further, noting that Dr. Glendalyz "opined that claimant could sit, stand, or walk for three hours continuously and frequently lift and carry 10 pounds and occasionally lift up to 25 pounds," contrary to Dr. Mihu's findings that Plaintiff had parethesis and paralysis.  (*Id.*)

**B. The ALJ's Assessment of Dr. Goldstein's Interrogatory**

The ALJ gave "significant weight" to Dr. Goldstein's interrogatory response that Plaintiff "could perform the full range of light work," (*id.* at 21), based on its similarity to Dr. Glendalyz's treating physician's report. (*Id.*)

When explaining the similarities between Dr. Goldstein's interrogatory and Dr. Glendalyz's treating records, the ALJ states that the "full range of light work" described in Dr. Goldstein's interrogatory is supported by Dr. Glendalyz's treatment records that "continuously indicate that claimant had no muscle weakness, no trouble walking or climbing stairs and had a steady gait." (*Id.* at 20.) The ALJ's statement about Dr. Glendalyz's treatment records are not supported by substantial evidence. Dr. Glendalyz's records do not "continuously indicate" Plaintiff's "steady" gait. On February 22, 2017, and January 12, 2018, Dr. Glendalyz noted that Plaintiff exhibited a steady gate. (*Id.* at 706, 714.) Conversely, on June 28, 2018, and July 5, 2018, upon examining Plaintiff, Dr. Glendalyz's records indicate that Plaintiff had "right hemiplegla with unsteady gait." (*Id.* at 699, 704.) The ALJ failed to remark on the differences in gait observations but rather indicated that the record "continuously" stated that Plaintiff had a steady gait, ignoring the more recent findings. (*Id.* at 20.)

Based on the contradictions with the treating physician record, the greater weight given to Dr. Goldstein's interrogatory

was not supported by substantial evidence and remand is appropriate.

**C. The ALJ's Assessment of Dr. Glendalyz's Opinion**

Additionally, the ALJ gave "significant weight" to Dr. Glendalyz's opinion that Plaintiff could "sit, stand, or walk for three hours continuously and frequently lift and carry 10 pounds and occasionally lift up to 25 pounds." (ECF No. 17, Tr. at 20.) Although the ALJ acknowledged that Dr. Glendalyz's was a "treating physician," the ALJ did not assign Dr. Glendalyz's opinion controlling weight, but rather "significant weight." (*Id.*) In considering the medical opinion evidence, the ALJ cited the revised regulations, 20 C.F.R. § 416.920c, rather than the applicable regulations, 20 C.F.R. 416.927, as the claim was filed before March 27, 2017. (*Id.* at 19.)

When the treating physician rule is not properly applied, remand is appropriate. *See Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009) (summary order) ("Where an ALJ fails to properly acknowledge [the treating physician rule] or to provide 'good reasons' for the weight given to the treating physician's opinion, we do not hesitate to remand.") (citation omitted).

Defendant contends that this error is harmless. (ECF No. 24, Def. Mem. at 9 n.5.) The Court agrees. In this case, the Court finds that "significant" weight and "controlling" weight appears to be equivalent. *Atwater v. Astrue,* 512 Fed. App'x 67,

70 (2d Cir. 2013) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear."); *see also Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004) (affirming the ALJ opinion which "did not expressly acknowledge the treating physician rule," but where "the substance of the treating physician rule was not traversed").  The ALJ's incorrect application of the treating physician rule, because Dr. Glendalyz's opinion was given significant weight, did not prejudice Plaintiff.  *See Zabala v. Astrue*, 595 F.3d 104, 410 (2d Cir. 2010) (finding that remand is unnecessary where there is no reasonable likelihood that remand will change the ALJ's determination).

**IV. The ALJ Did Not Fail to Develop the Record**

Finally, Plaintiff contends that the ALJ erred in his determination that Plaintiff did not meet the standard for disability as an adult because the ALJ "failed to satisfy the duty to develop the record." (ECF No. 21, Pl. Mem. at 6.)  This contention is meritless.  Although Plaintiff claims that the ALJ failed to obtain medical records or inquire about other records that might be available concerning Plaintiff's developmental delay, Plaintiff does not provide any information as to what medical records should have been included or obtained.  (*Id.*)

Plaintiff bears the burden of proving his disability and furnishing evidence necessary to support this impairment, including

medical records.  20 C.F.R. § 416.912(a).  This duty applies to each level of the administrative review process.  *Id.*  Though the ALJ must attempt to fill any gaps in the record, "where there are no obvious gaps . . . and where the ALJ already possesses a 'complete medical history,'" the ALJ is under no obligation to seek additional information where the plaintiff has not identified any additional information. *Rosa v. Callahan*, 168 F.3d 72, 79, n. 5 (2d Cir. 1999). Furthermore, the ALJ maintains significant discretion in determining when the existing record evidence is sufficient to make a disability determination and when further evidence should be sought.  20 C.F.R. § 416.920b.  Here, Defendant contends that the "record was complete" based on "ample medical records," (ECF No. 24, Def. Mem. at 13), which is supported by Plaintiff's attorney's statement at the June 2019 administrative hearing that "all of the evidence was in the record." (ECF No. 17, Tr. at 39.)  In sum, the record does not support Plaintiff's contention that the record is undeveloped. Thus, the Court finds that the ALJ's determination was based on a complete record.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is **GRANTED** and Defendant's cross-motion for judgment on the pleadings is **DENIED**, and the case is **REMANDED** for further proceedings consistent with this Memorandum and Order.  The Clerk of Court is directed to enter judgment in favor of Plaintiff

and to close the case.

**SO ORDERED.**

_____
Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York


Dated:      October 13, 2023
            Brooklyn, New York